**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEBORAH LILLY, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:22-CV-1331 SRW |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on review of an adverse ruling by the Social Security

Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C.

§ 405(g). The parties consented to the exercise of authority by the United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF

No. 10. Defendant filed a Brief in Support of the Answer. ECF No. 11. The Court has reviewed

the parties' briefs and the entire administrative record, including the transcripts and medical

evidence. Based on the following, the Court will reverse the Commissioner's denial of Plaintiff's

application and remand the case for further proceedings.

## I.     Factual and Procedural Background

On February 6, 2020, Plaintiff Deborah Lilly protectively filed an application for

disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.* Tr. 166-67. Plaintiff's

applications were denied on initial consideration and reconsideration. Tr. 59-66, 69-74, 79-82,

86-89. On February 16, 2021, she requested a hearing before an Administrative Law Judge

("ALJ"). Tr. 95-96.

Plaintiff appeared for a video hearing, with the assistance of counsel, on October 7, 2021. Tr. 30-58. Plaintiff testified concerning her disability, daily activities, functional limitations, and past work. *Id*. The ALJ also received testimony from vocational expert ("VE") James Israel, LPC, CVE, CRC. *Id*. On November 17, 2021, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 8-26. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 27-28, 158-60. On May 14, 2021, the Appeals Council denied Plaintiff's request for review. Tr. 1-7. Accordingly, the ALJ's determination stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    **Legal Standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th

Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.    The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2024. Tr. 13. Plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 22, 2019. *Id*. The ALJ found Plaintiff has the severe impairments of: "osteoarthritis of the right hip, status-post right hip arthroplasty." Tr. 13-16. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 16. The ALJ found Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except the claimant can only occasionally stoop, kneel, crouch, crawl and climb ramps or stairs; cannot climb ladders, ropes or scaffolds; can perform no balancing, as defined by the SCO;[1] and can have no exposure to unprotected height or hazardous machinery and only occasional exposure to extreme cold or vibration.

*Id*.

The ALJ found Plaintiff is capable of performing past relevant work as a hospital medical insurance representative (*Dictionary of Occupational Titles* ("*DOT*") No. 166.267-014, Sedentary, SVP 6), a secretary (DOT No. 201.362-030, Sedentary, SVP 6) and an accounting

---

[1] The SCO or Selected Characteristics of Occupations is the companion publication to the Dictionary of Occupational Titles.

clerk (DOT No. 216.482-010, Sedentary, SVP 5). Tr. 20-21. The ALJ found that this work does not require the performance of activities precluded by the Plaintiff's residual functional capacity (20 CFR 404.1565). *Id*. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from October 22, 2019, through the date of her decision, issued on November 17, 2021. Tr. 21.

## IV.    Discussion

Plaintiff asserts her RFC is not supported by substantial evidence because the ALJ improperly assessed her mental impairments. ECF No. 10. Plaintiff takes specific issue with the ALJ's analysis at step two of the sequential evaluation process where her mental impairments were determined to be "non-severe" and did "not cause more than a minimal limitation in [her] ability to perform basic mental work activities[.]" Tr. 14. Plaintiff argues the ALJ's evaluation of her mental impairments was erroneous because the ALJ "improperly relied on (1) mental status examinations, (2) minimal treatment with a lack of emergency room care, and (3) activities of daily living to conclude [her] mental impairments were not severe." ECF No. 10 at 2-3. Rather, Plaintiff contends the record shows consistent symptoms of anxiety, depression, sadness, and forgetfulness, constituting sufficient evidence to meet the *de minimis* standard of proof for a severe mental impairment. ECF No. 10 at 3-4 (citing Tr. 311, 383, 541, 543-44, 611).

At step two of the disability analysis, the ALJ determines if a claimant's impairments are severe and have lasted or are expected to last for at least twelve months. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), 416.909. To show an impairment is severe, a claimant must show she has (1) a medically determinable impairment or combination of impairments, (2) which significantly limits her physical or mental ability to perform basic work activities, without regard to age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c);

6

404.1521(a); 416.920(a)(4)(ii), (c); 416.921(a). Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b). If the claimant does not have a severe medically determinable impairment, or combination of impairments, then she is not disabled. *See* 20 C.F.R. §§ 416.920(a)(4)(ii).

While the requirement of severity is "not a toothless standard," it is also not an "onerous requirement." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Although Plaintiff bears the burden to prove the existence of severe impairments, "the burden of a claimant at this stage of the analysis is not great." *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal citation omitted). The ALJ may not "pick and choose only evidence in the record buttressing his conclusion." *Taylor ex rel. McKinnies v. Barnhart*, 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004).

In this case the ALJ cited to a number of medical records to support the conclusion that Plaintiff's mental impairments were non-severe because they caused only mild limitations in the four mental functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Tr. 14-15; 20 C.F.R. §§ 416.920a(c)(3)–(4).

On March 4, 2020, Plaintiff appeared to urgent care for her elevated blood pressure and chest pressure. Tr. 283-85. The ALJ observed that during her physical examination, she was described as cooperative with an appropriate mood and affect, normal judgment, and non-suicidal. Tr. 14 (citing Tr. 284). On August 21, 2020,[2] Plaintiff appeared for an Internal Medicine

---

[2] The ALJ cited this examination as occurring in January of 2021. Tr. 14. However, the record reflects that the examination occurred on August 21, 2020. Tr. 329.

Examination ("IME") for her Social Security Disability claim. Tr. 329-33. Plaintiff underwent a

physical examination by a non-treating physician assistant, Deborah Wagner, P.A.-C. *Id.* The

examiner indicated that Plaintiff's anxiety and depression were not discussed during the physical

exam and wrote, "Please see psychology notes." Tr. 332. However, as the ALJ observed, the

exam showed no evidence of significant memory impairment, normal affect, and an ability to

understand and follow directions. Tr. 14 (citing Tr. 332).

The ALJ noted that on February 25, 2021, Plaintiff visited with her neurologist, Dr.

Zaheer Ahmed, for a follow up appointment regarding "episodes of confusion." Tr. 14 (citing Tr.

391-93). The ALJ remarked that Plaintiff reported overall "improvement in the episodes of

confusion" and only had two episodes within the prior year. Tr. 14. The most recent episode

occurred three or four months prior to the appointment. *Id*. However, during this same visit, Dr.

Ahmed noted that these episodes lasted a few hours, Plaintiff had trouble with her speech and

was slurring, and she was having difficulty comprehending. Tr. 391. When Plaintiff was working,

she was having these episodes of confusion "several times a month" and "stress and anxiety used

to bring them on." Tr. 391, *see also* Tr. 40-41. Since she was unable to work for more than a year

prior to that appointment, Dr. Ahmed noted "[c]ompared to the past frequency of these

episodes," she "improved significantly." Tr. 391. Dr. Ahmed additionally documented her history

of anxiety and depression. Tr. 392. He ordered her to continue taking Keppra[3] and to contact his

office if the confusion episodes worsened. Tr. 393.

The ALJ considered that during an exam in March of 2021, Plaintiff "was alert and

orientated, was not agitated or anxious, had an appropriate mood and affect, exhibited normal

---

[3] Keppra is a brand name for Levetiracetam, which is "used alone or together with other medicines to help control certain types of seizures (e.g., partial seizures, myoclonic seizures, or tonic-clonic seizures) in the treatment of epilepsy." *Levetiracetam (Oral Route)*, Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/levetiracetam-oral-route/side-effects/drg-20068010?p=1 (last visited Sept. 11, 2023).

behavior and had intact memory." Tr. 14 (citing 574-79). This examination was for the

evaluation and treatment of her right hip pain. Tr. 574. On April 9, 2021,[4] the ALJ noted Plaintiff

reported during an exam that she was "coping well and only rarely needed her medications;" she

had "a normal mood, good judgment and intact memory." Tr. 14 (citing Tr. 379-86). The record

notes this exam was a virtual appointment with her primary care physician's office for

medication refills. Tr. 382. The nurse practitioner indicated Plaintiff was negative for depression

and was not observed to be nervous nor anxious. Tr. 383. Plaintiff reported she was "sad at

times" due to her son's untimely death from being shot in the back by a police officer, but stated

she was "coping well." *Id.* Plaintiff noted she takes Ativan[5] "very rarely," and is "[u]sing other

methods to manage symptoms." *Id*.

  The ALJ then summarized two appointments in September of 2021 with Plaintiff's

therapist, Dr. Dawn McFarland, Psy.D. Tr. 14.

> [T]he claimant had intact attention and vigilance, but had markedly delayed response and
> impaired repetition. The claimant had intact remote memory but impaired recent
> memory. The claimant was unable to perform simple division problems, could perform
> simple and complex addition and subtraction problems. Later in the month, her therapist
> noted the claimant had slurred speech and struggled to speak. Her therapist expressed
> concern for a possible cognitive impairment, but noted her functioning that day was
> unusual, as the claimant['s] functioning was generally much higher during most exams.

Tr. 14. (citing 569-70, 611-12).

  The record shows Plaintiff visited Dr. McFarland on multiple occasions, including a visit

on September 8, 2021. At that visit Plaintiff had to make three attempts to initiate what she was

trying to say, including the statement, "It's not that I don't don't want to go to work, I would love

---

[4] The ALJ cited this examination as occurring in April of 2020. Tr. 14. However, the record reflects that the
examination occurred on April 9, 2021.

[5] Lorazepam, or Ativan, is used for short-term relief of anxiety symptoms related to anxiety disorders and anxiety-
associated insomnia. *See* National Library of Medicine, Lorazepam, available at
https://www.ncbi.nlm.nih.gov/books/NBK532890/ (last visited on Sept. 11, 2023).

to go to work . . . but everyday is a crapshoot." Tr. 569. Plaintiff wondered if she had a more

serious condition, such as bipolar. *Id.* Dr. McFarland noted the following observation from her

Strub and Black mental status exam:

> Attention—7 digit span average (but not for college level ed.)
>
> Vigilance—Intact but markedly delayed response (pt denied pain when asked if it hurt to clap)
>
> Repetition—Impaired. Able to repeat string up to 8 letters.
> . . . .
>
> Remote memory—Intact
>
> New Learning—after 5 minutes she was unable to provide any of the 4 words she had been asked to remember, "I have no clue" After 10 and 20 minutes, she reported no recall of the words.
>
> Immediate Recall— Impaired. When presented w/ a story of 26 bits of information, Pt correctly recollected only 9 bits of information, and made 1 confabulation.
> . . . .
>
> Calculations— Impaired. Pt correctly performed simple verbal addition, subtraction and multiplication but not division. She provided correct responses for complex verbal subtraction and complex verbal multiplication but failed to provide correct responses for complex addition and complex division. When asked to perform complex written calculations, she provided correct answers for addition and subtraction but failed to provide correct answers for division and multiplication.

Tr. 569-70

On September 30, 2021, Dr. McFarland noted Plaintiff suffered from slurred speech and

repeatedly apologized for her impaired speech. Tr. 611. She was "[v]ery forgetful, losing train of

thought, almost every [time] she spoke." *Id.* Plaintiff's "movements [were] more stilted than

usual." *Id.* Plaintiff "asked for clarification several times, explaining that she couldn't

understand." *Id.* Dr. McFarland screened her for a stroke. *Id.* Plaintiff still "used words sparsely

and struggled to speak." *Id.* Plaintiff explained that "she usually feels like this for about 3 days."

*Id.* Dr. McFarland was concerned about a possible UTI. *Id.* Plaintiff stated that she did not know

10

what a UTI was, which the doctor noted a woman her age would normally know. *Id.* Plaintiff

was embarrassed that she could not remember what a UTI was. *Id.* A UTI could lead to a brain

infection, and sometimes psychosis, and "may also be contributing to her mild cognitive

impairment, which is a precursor to dementia." *Id.* Dr. McFarland indicated a concern for

possible cognitive impairment and observed that "working in a state like this would be

impossible." *Id*. Dr. McFarland expressed shock at the severity of Plaintiff's symptoms and noted

her functioning was typically much higher. *Id*.

The doctor encouraged her to go immediately to Urgent Care. Approximately three hours

after her visit, Dr. McFarland called Plaintiff and learned that she did go to Urgent Care, which

did not examine her, but sent her to the emergency room. By that time her speech and other

symptoms had returned to normal. Tr. 611. Dr. McFarland suspected a possible "TIA, which

might be too small for detection on an MRI or CAT scan. I also suspect numerous metabolic

issues far beyond the scope of standard of care that she has been receiving." Tr. 612. The doctor

finished her report by noting Plaintiff's Persistent Depressive Disorder, and Other Cognitive

Impairment related to Fibromyalgia. *Id.*

The ALJ opined that the above cited records evidenced "minimal treatment" with "many

normal exam findings," supporting the ALJ's determination that Plaintiff's mental health

symptoms were non-severe. However, the Court finds that the substantial evidence in the record

as a whole does not sustain this conclusion. As Plaintiff points out in her briefing, she visited

with her therapist, Dr. McFarland, more than the two times cited by the ALJ. *See* ECF No. 541-

72, 610-12 (evidencing numerous psychotherapy visits from 2020 to 2021). In addition to the

two visits noted above, on January 28, 2020, Plaintiff's depression was so severe she told Dr.

McFarland she "prays for some tragedy to end it all," Tr. 541, and on February 13, 2020 she felt

as if she was "paralyzed by anxiety," Tr. 543. Dr. McFarland noted Plaintiff's statements that her medication was "not hopeful" and she often felt "dangerously close" to experiencing a panic attack. Tr. 544. Although the record indicates she rarely takes Ativan for her mental health symptoms, she explained at her hearing that the reason for her sporadic usage was to prevent addiction. Tr. 48-49. Plaintiff has a documented history with alcohol, nicotine, and Xanax dependence. Tr. 291, 330, 541, 548, 554. Her therapist explained that although she rarely uses Ativan, she does require "other methods to manage symptoms" and suffers from "persistent depressive disorder." Tr. 383, 546-47.

Notably, the record reveals she actively took the anti-depressant, Amitriptyline[6] "as directed," which the ALJ did not address, and which is contrary to the non-treating state agent consultants who contradictorily indicated that the record did not include a diagnosis of depression. Tr. 64, 72, 347, 353, 594, 600, 605. The ALJ must resolve any material inconsistencies or ambiguities in the evidence of record, especially considering the ALJ found the opinions of the state agent consultants to be persuasive. Tr. 20. *See Ackerman v. Kijakazi*, 2023 WL 2496839, at *5 (E.D. Mo. Mar. 14, 2023) (citing SSR 96-8p, 1996 WL 374184, at *7). Additionally, Plaintiff participated in biofeedback[7] as a form of treatment, which the ALJ also did not address. Tr. 544, 545, 611. Her therapist further indicated "her apathy and depression"

---

[6] Amitriptyline is FDA approved medication to treat depression in adults. *See* National Library of Medicine, Amitriptyline, available at https://www.ncbi.nlm.nih.gov/books/NBK537225/ (last visited Sept. 11, 2023).

[7] "Biofeedback is a mind–body technique in which individuals learn how to modify their physiology for the purpose of improving physical, mental, emotional and spiritual health. Much like physical therapy, biofeedback training requires active participation on the part of patients and often regular practice between training sessions. Clinical biofeedback may be used to manage disease symptoms as well as to improve overall health and wellness through stress management training." National Library of Medicine, *Biofeedback in medicine: who, when, why and how*, available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2939454/ (last visited Sept. 11, 2023).

"interfere with the energy" she needs to get the proper medical care for her cognitive decline. Tr. 611.

Moreover, the "normal exam findings" the ALJ relies upon relate to appointments Plaintiff had with non-mental health treating physicians. For example, the ALJ cites to records from an urgent care visit related to elevated blood pressure, an IME examination which explicitly did not evaluate her mental health diagnoses, an appointment with her neurologist treating her for physical impairments only, and a notation from her orthopedist indicating she exhibited no outward issues related to mood, affect, or behavior when discussing her hip pain. Tr. 14. Isolated normal mental status examinations may not be "cherry-picked" to give "more weight to the cursory findings of non-mental health providers rather than the detailed abnormal findings of mental health providers." *Barber v. Saul*, 2021 WL 1088098, at *8 (E.D. Mo. Mar. 22, 2021) (citing *Taylor o/b/o McKinnies v. Barnhart,* 333 F. Supp. 2d 846, 856 (E.D. Mo. 2004) (ALJ cannot "pick and choose only evidence in the record buttressing her conclusion")).

The undersigned is also concerned with the significance the ALJ attributed to Plaintiff's September 30, 2021 visit with Dr. McFarland in which she was noted to appear "very forgetful . . . used words sparsely and struggled to speak," but exhibited no signs of abnormal symptoms later in the day. Tr. 611-12. "[R]ecognition must be given to the instability of mental impairments and their waxing and waning nature after manifestation." *Lillard v. Berryhill*, 376 F. Supp. 3d 963, 984 (E.D. Mo. 2019) (citing, among other cases, *Jones v. Chater*, 65 F.3d 102, 103 (8th Cir. 1995)). "[S]ymptom-free intervals do not necessarily compel . . . a finding [of not disabled] when a mental disorder is the basis of a [disability] claim." *Wigfall v. Berryhill*, 244 F. Supp. 3d 952, 965 (E.D. Mo. 2017) (quoting *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996)). Notably, in the same month Dr. McFarland noted her drastically fluctuating condition,

13

Plaintiff reported to her therapist that she wonders if she actually suffers from something worse. Tr. 569.

The Court does not find that substantial evidence in the record as a whole supports the ALJ's opinion. While the ALJ did discuss Plaintiff's mental health issues when formulating the RFC, the ALJ relied on records which do not appear to be supported by substantial evidence in the record as a whole. Therefore, the Court will remand this matter to the Commissioner to more fully evaluate and supplement as necessary the medical and nonmedical evidence of record relating to the severity of Plaintiff's mental health impairments and her RFC. In doing so, the ALJ must discuss the inconsistency between the evidence in the record showing Plaintiff was diagnosed with and treated for depression and the state agent consultants who indicated that the record does not include such a diagnosis.

Also, upon remand, the Court directs the ALJ to expound upon whether Plaintiff is, in fact, capable of performing her past relevant work. Plaintiff most recently worked with an insurance company credentialing medical professionals. Tr. 40. Prior to that she worked with hospitals to credential medical professionals. Tr. 39. Her three prior jobs were working as an office manager. Tr. 37-39. The VE classified these occupations as a hospital medical insurance representative and secretary, both with an SVP of 6, and an accounting clerk with an SVP of 5.[8] Tr. 54-55. According to Social Security Ruling 00–4p, "skilled work corresponds to an SVP of 5-9 in the DOT." Skilled work "may require dealing with people, facts, or figures or abstract ideas

---

[8] "SVP" refers to Specific Vocational Preparation, defined in Appendix C of the *Dictionary of Occupational Titles* (DOT) as being "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."

at a high level of complexity," 20 C.F.R. § 404.1568(c), and involves "good cognitive functioning," *SSA Program Operations Manual*, Ch. Disability Insurance, subchapter 25001.001.

The ALJ determined the evidence in the record does not indicate there is "more than a minimal limitation in the claimant's ability to do *basic* work activities." Tr. 15 (emphasis added). The ALJ asked the VE during the hearing whether a hypothetical individual who could only perform "simple, routine, repetitive tasks with only occasional interactions with supervisors, coworkers, and the general public" would preclude Plaintiff's past work. Tr. 56. The VE answered in the affirmative, stating "[a]bsolutely across the board as it would go against all those restrictions in total." *Id.*

Rather than including these limitations in the RFC, the ALJ omitted them, and any other mental health limitations in the RFC. The ALJ then found Plaintiff was able to return to her previous job performing skilled work, with the record at best supporting her ability to do basic work. The ALJ does not include a discussion within the decision of whether Plaintiff's ability to do "basic work" would also allow her to perform the "skilled work" of her past jobs, including tasks that are more than simple or routine and require more than occasional interactions with others. *See, e.g.*, *Evalyne Kathleen H. v. Kijakazi*, 2022 WL 539104, at *5 (D. Kan. Feb. 23, 2022) (remanding when "the decision and the record evidence does not reflect that the ALJ actually compared Plaintiff's mental abilities with the mental demands of her past relevant work which was skilled work with an SVP of 5 or 6").

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is

**REVERSED** and that this case is **REMANDED** under 42 U.S.C. 1383(c)(3) and Sentence Four

of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

So Ordered this 13th day of September, 2023.

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE